UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DEBBIE A. SHOCKLEY,                    )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )      3:06-CV-322
                                       )      (PHILLIPS/SHIRLEY)
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )


**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc.

15] and the defendant's motion for summary judgment. [Doc. 17]. Plaintiff Debbie A. Shockley

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final

decision of the defendant Commissioner.

I.      **ALJ Findings**

            ALJ John McFadyen made the following findings:

            1. The claimant met the disability insured status requirements of the
            Act on March 1, 2003, the date the claimant stated she became unable
            to work; and continues to meet them through the date of this decision.

            2. The claimant has not engaged in substantial gainful activity since
            March 1, 2003.

            3. The medical evidence establishes that the claimant has a severe
            musculoskeletal impairment, but that she does not have an
            impairment or combination of impairments listed in, or medically
            equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's allegations of disabling pain and other symptoms are not credible and are not supported by the documentary and other evidence of record.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for medium to heavy exertion, working overhead or at shoulder level, and standing and/or walking longer than four hours of eight.  In addition, she has "seriously limited but not precluded" ability to relate to co-workers, deal with the public, interact with supervisors, and behave in an emotionally stable manner (20 C.F.R. §§ 404.1545 and 416.945).

6.  The claimant is unable to perform her past relevant work as a machine operator, inspector, short order cook and cashier, and sewing machine operator.

7.  The claimant's residual functional capacity for the full range of light work is reduced by the restrictions indicated above.

8.  The claimant is 45 years old, which is defined as younger-aged (20 C.F.R. §§ 404.1563 and 416.963).

9.  The claimant has a high school education (20 C.F.R. §§ 404.1564 and 416.964).

10.  The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 C.F.R. §§ 404.1568 and 416.698).

11.  Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and 416.969 of Regulations No. 16, and Rules 202.20 and 202.21, table No.2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12.  Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rules as a framework for decision[-]making, there are a significant number of jobs in that national economy which she could perform.  Examples of such jobs are: information clerk, order clerk, hand packager, sorter, assembler, inspector, cashier, and ticket seller.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[Tr. 21-22].

## II. Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 1142 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520).

Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden

shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform. Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.     Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled,

the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and

whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997).

Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001)

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but

less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324,

1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial

evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of

Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings

is not appropriate "merely because there exists in the record substantial evidence to support a

different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d

at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached"); Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

**IV.** **Arguments**

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred by: (A) failing to accord proper weight to the medical opinions of record, and (B) failing to find that the Commissioner did not meet his burden of establishing that there are jobs within the national economy which Plaintiff can do. [Doc. 16]. The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. Specifically, the Commissioner argues that substantial evidence exists to support the ALJ's analysis of the medical opinions in the record, and the ALJ properly relied on the testimony of a vocational expert to determine that a sufficient number of jobs, that Plaintiff is capable to perform, exist in the national economy. Accordingly, the ALJ correctly concluded that Plaintiff was not disabled. [Doc. 18]. These issues will be discussed hereinafter, in this same order.

*A.* *According Proper Weight to the Medical Opinions of Record*

Plaintiff argues the ALJ erred in failing to accord the proper weight to the opinions of Dr. Manning, Dr. Sultan, and the state agency physician, Dr. Kupstas. [Doc. 16]. In response, the Commissioner argues that substantial evidence supports the ALJ's analysis of the medical opinions and that the ALJ did not err in finding that these three opinions did not warrant great

weight.  [Doc. 18].

An ALJ must evaluate every medical opinion he receives.  20 C.F.R. § 404.1527(d). When evaluating these opinions, he must consider the following factors: the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(d)(1)-(6).  Additionally, more weight is usually given to opinions from treating sources since they are more likely to provide a detailed, longitudinal picture of the claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  An ALJ may not, however, assign controlling weight to a treating physician's opinion if that opinion is not supported by sufficient clinical findings or it is inconsistent with the evidence.  Walters, 127 F.3d at 530.

Plaintiff continuously argues that Drs. Manning and Sultan were treating physicians; therefore, their opinions are entitled to great weight.  Though they may be treating physicians, the record reflects that Plaintiff had numerous treating physicians.  Her primary care physician was Dr. Luis Pannochia.  [Tr. 54, 84, 183].[1]  Plaintiff also listed Dr. Noor as her primary care doctor affiliated with a pain center.  [Tr. 102].  Her treating psychologist throughout was Dr. Bilal Ahmed. [Tr. 84].  Therefore, even limiting the ALJ's opinions to those provided by physicians who actually treated Plaintiff, numerous opinions exist.

Plaintiff argues numerous errors; each of these will not be discussed.  The standard is not whether some evidence exists in the record which might support a different conclusion.

---

[1]The Court notes that, although Plaintiff often stated her primary care physician was Dr. Luis Pannochia, his name appears only briefly in the record, and the record contains no documents bearing his signature.

Buxton, 246 F.3d at 772. Instead, the ALJ's decision must be affirmed if the evidence could reasonably support the conclusion reached. Her, 203 F.3d at 389-90; see also Dorton, 789 F.2d at 367 (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). Accordingly, this Court reviews whether substantial evidence exists in the record to reasonably support the ALJ's conclusion that Plaintiff was not disabled as determined by the regulations.

Plaintiff applied for disability benefits, alleging an onset date of March 1, 2003. [Tr. 56]. In support thereof, she stated that she has rheumatoid arthritis, severe depression, fibromyalgia, hepatitis C, liver problems, and is often fatigued. [Tr. 18, 68]. Additionally, she cited her inability to: associate with people, effectively use her hands, climb or squat or walk well, and concentrate well. At the hearing on June 1, 2004, Plaintiff stated that she could not work because of severe depression, anxiety, short term memory loss, fibromyalgia, degenerative disc disease, and Hepatitis C. [Tr. 385]. Each of these allegations of disability will be discussed below.

### 1. Rheumatoid Arthritis

Plaintiff claims she suffers from rheumatoid arthritis. Initially, Dr. Manning diagnosed Plaintiff as suffering from rheumatoid arthritis because her rheumatoid factor tested positive on September 17, 2002. [Doc. 123]. On October 17, 2002, however, Dr. Manning reported that the "last test here showed no rheumatoid arthritis after initial rheumatoid test was positive." [Tr. 121]. Again, on November 18, 2002, Dr. Manning determined that the test for rheumatoid arthritis showed Plaintiff did not have rheumatoid arthritis. [Tr. 120]. Further, Dr. Wayne Page, a consultative physician with the Tennessee Disability Determination Services, noted that Dr. Segar, a rheumatologist, reported Plaintiff did not suffer from rheumatoid arthritis. [Tr. 215]. Therefore,

based on the entire record in this case there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled based upon rheumatoid arthritis.

2.      Severe Depression

Plaintiff's treating psychologist was Dr. Bilal Ahmed.  [Tr. 84].  As Plaintiff noted, a treating physician's opinion is entitled to greater weight than another physician's opinion.  20 C.F.R. § 404.1527(d)(2).  As to Plaintiff's depression, Dr. Ahmed diagnosed her with major depression on the following dates: January 31, 2003; April 14, 2003; February 24, 2004 [Tr. 152, 154, 230].  On July 11, 2003, Dr. Ahmed recorded Plaintiff's symptoms as low-grade depression, but diagnosed her with major depression, a contradictory finding.  [Tr. 236].  Again, on December 10, 2003, Dr. Ahmed noted that Plaintiff "[c]ontinues to have low-grade depressive symptoms," but diagnosed major depression.  [Tr. 233].  Importantly, on September 22, 2003, and May 3, 2004, Dr. Ahmed noted that Plaintiff did not have any indicia of a psychosis.  [Tr. 234, 282].

On February 2, 2004, Plaintiff missed her appointment with Dr. Ahmed, but informed him that she was only suffering mild symptoms of depression.  [Tr. 283].  On May 3, 2004, Dr. Ahmed noted that Plaintiff had not been to his office for treatment for two to three months, stating that she had been assisting her sick ex-mother-in-law.  [Tr. 282].  She self-reported doing "adequately well," and denied suffering from severe depression.  [Id.].  On that same date, Dr. Ahmed reported that Plaintiff had the remains of major depression.  [Tr. 282].  Dr. Ahmed made the same diagnosis on July 13, 2004, finding that her "major depression" was in partial remission.  [Tr. 330].

Though the record reflects that Plaintiff suffers from depression, substantial medical evidence exists to support the ALJ's finding that Plaintiff is not disabled.  In Dr. Ahmed's July 17,

2003 "Treatment Plan Review" he states a goal that Plaintiff is to obtain employment. [Tr. 235].

Though in the midst of treatment, Dr. Ahmed believed Plaintiff to be capable of work. Additionally, as of February 2, 2004, Plaintiff self-reported only mild depression. Later appointments endorsed this report. As Plaintiff's primary treating psychologist from her alleged onset date to the filing of supplementary documents post-hearing, Dr. Ahmed's medical opinion of Plaintiff's psychiatric and mental health condition bears great weight.

In addition to Dr. Ahmed's findings, Dr. Manning also found Plaintiff to be depressed. [Tr. 118]. He determined that her depression was controlled by medication. [Tr. 113]. Dr. Juanid Sultan also noted, on February 2, 2004, that Plaintiff's did not exhibit a depressed mood or affect. [Tr. 271]. Further, Dr. Wayne Page, a consultative physician found that Plaintiff exhibited no objective signs of depression. [Tr. 219]. Between Plaintiff's primary treating psychologist and the other doctor's opinions, sufficient evidence exists to support the ALJ's findings that, though Plaintiff suffers from depression, this depression has been controlled by medication and treatment. [Tr. 19].

3.      Fibromyalgia

Plaintiff claims she suffers from fibromyalgia, which renders her disabled from employment. On November 18, 2002, and May 15, 2003, Dr. Manning stated that Plaintiff had a tender shoulder area, which indicated that she potentially had fibromyalgia. [Tr. 114, 120]. In December of 2002, Dr. Manning specifically noted that Plaintiff had multiple trigger points indicative of fibromyalgia. [Tr. 119]. Dr. Manning diagnosed her with fibromyalgia on the following dates: December 17, 2002; January 5, 2003; April 15, 2003; June 17, 2003; July 15, 2003; August 15, 2003; [Tr. 113, 115, 118-19, 239, 241]. Dr. Sid Noor also diagnosed Plaintiff as having

fibromyalgia on numerous occasions. [Tr. 223, 243-44]. Additionally, Dr. Wayne Page, a consultative physician with the Tennessee Disability Determination Services, noted that Dr. Segar, a rheumatologist, reported that Plaintiff may suffer from fibromyalgia. [Tr. 215]. Though much evidence exists indicating that Plaintiff may suffer from fibromyalgia, the record does not reflect that she is incapable of work. In fact, the record reflects that she is capable of work, her pain is controlled by medication, and that there may be a lack of credibility .

The record reflects that Plaintiff was gainfully employed from November 2002 until March 2003. [Tr. 87]. During this time period, Dr. Manning diagnosed Plaintiff with fibromyalgia. Clearly, she was able to work at that time, even though she had been diagnosed with fibromyalgia. Where a claimant has worked while affected by an impairment, the claimant must prove that her condition has deteriorated significantly to substantiate a claim for disability based on that condition. Noble v. Acting Comm'r of Soc. Sec., 978 F. Supp. 980, 986 (D. Kan. 1997) (citing Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)).

Additionally, significant evidence exists that pain medication controlled Plaintiff's fibromyalgia. On April 15, 2003, Dr. Manning noted that the Plaintiff reported constant pain, but he found that her pain medication, Duragesic, was "[c]ontrolling her pain reasonably well." [Tr. 115]. A few months later, in June of 2003, Dr. Manning stated that the "Duragesic patch has worked well for controlling her pain and allowing her to continue to function." [Tr. 113].

As to credibility, a recent case, Rogers v. Comm'r of Soc. Sec., 486 F.3d 234 (6th Cir. 2007) (pagination pending), establishes that credibility determinations are particularly important when fibromyalgia is at issue. Unlike many medical conditions, fibromyalgia cannot be confirmed by objective testing; therefore, its diagnosis is largely subjective. Id. at ___, slip op. at 7. "The

process of diagnosis fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. Id. (citing to Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)). Where a treating doctor has systemically eliminated potential other causes of pain, and tender points with "'classic fibromyalgia'" distribution are noted, an ALJ should not discount the treating physician's findings without providing specific, good reasons. Id. at ___, slip op. at 7, 8 (citing Preston, 854 F.2d at 820).

In this case, the record is devoid of a systematic attempt to disqualify other medical conditions as possible causes of Plaintiff's tender points. Though tender points were noted by several doctors, they were also not noted by others. [Noted: Tr. 119, 223, Not noted: Tr. 219, 222]. No doctor opined that the tender points were in a classic fibromyalgia distribution, though some did say the tender points were indicative of fibromyalgia. A lack of both systematic testing and a classical distribution of tender points makes the present case markedly different from either Rogers or Preston. Additionally, while a primary treating physician, Dr. Manning diagnosed Plaintiff as suffering from fibromyalgia between November 2003 and March 2003, he noted it did not prevent Plaintiff's gainful employment. [Tr. 87].

Further, several doctors found Plaintiff to be incredible. Dr. Wayne Page, a consultative physician, evaluated Plaintiff. He found that she did not have trigger points – a necessity to a fibromyalgia diagnosis. [Tr. 219]. Specifically, he found, "there are no findings consistent with a diagnosis of fibromyalgia," and that an emotional component existed to Plaintiff's physical complaints. [Tr. 220]. Dr. James P. Lester, a consultative physician with the Tennessee Department of Human Services, evaluated Plaintiff on August 27, 2003. He too found no trigger

points consistent with fibromyalgia. [Tr. 222]. Moreover, Dr. Page noted that Plaintiff was uncooperative and unreliable based on invalid grip and muscle testing. [Tr. 218]. He also stated that "she reports she can carry 25 to 30 pounds, but states she cannot walk any distance. This is inconsistent and is a contradiction." [Tr. 220]. Dr. Nevils, a consultative psychologist, also opined that Plaintiff was "mirroring the 'fake bad' protocol." [Tr. 291, 292].

In his findings, the ALJ determined that "[c]laimant's allegations of disabling pain and other symptoms are not credible and are not supported by the documentary and other evidence of record." [Tr. 22]. He noted that claimant has a history of drug seeking behavior and failed to put forth effort in consultative examinations. [Tr. 21]. Additionally, he noted:

> [T]he undersigned has considered the opinions of Dr, Manning and Dr. Junaid Sultan that the claimant is disabled and/or unable to engage in substantial gainful activity. However, these opinions are not supported by the documentary evidence and are inconsistent with other more reliable evidence of record, specifically the documentary evidence; the opinion of a medical expert, Dr. Blickenstaff; the opinions of Drs. Page and Nevils; the opinions of State Agency medical sources; and the claimant's actual activities.

[Tr. 21]. The Court finds that the ALJ has provided specific, good reasons for discounting the opinions of Plaintiff's treating physicians and Plaintiff's own testimony, satisfying the strictures of Rogers. Additionally, the ALJ's conclusion with respect to credibility is given deference. Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). Upon review of the record and the ALJ's findings, this Court finds that substantial evidence, "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion," exists to support the ALJ's conclusion that Plaintiff's allegations of disabling pain based on fibromyalgia are not credible. Heston, 245 F.3d at 534 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Accordingly, Plaintiff's claim of error fails on this point.

4.      Hepatitis C and Liver Problems

Plaintiff claims she is disabled because she has Hepatitis C and liver problems.  It is uncontroverted that Plaintiff is positive for Hepatitis C.  [Tr. 115, 241, 297].  At the administrative hearing, she testified that she is not undergoing treatment for her Hepatitis C.  [Tr. 393].  As to other liver problems, Plaintiff self-reports that her liver is swelling.  [Tr. 101].  The record does not contain any medical findings that Plaintiff's liver is presently causing her problems.

Plaintiff must provide medical evidence which shows that she has an impairment which is disabling.  20 C.F.R. § 220.45.  While it is certainly possible that Hepatitis C could someday preclude Plaintiff from gainful employment, no evidence exists to controvert the ALJ's finding that Plaintiff is not presently disabled based on liver problems or Hepatitis C.  Accordingly, the ALJ's determination must be affirmed.

5.      Fatigue

Plaintiff claims fatigue disables her from work.  [Tr. 79, 97].  Dr. Manning's reports on Plaintiff's fatigue are generally contradictory:

•       December 17, 2002,[2] Dr. Manning noted that Plaintiff was chronically fatigued [Tr. 119];

•       April 15, 2003, he no Plaintiff reported no energy, but Dr. Manning found no intense fatigue existed [Tr. 115];

•       May 15, 2003, he noted that Plaintiff self-reported overwhelming fatigue [Tr. 114];

_____

[2]The Court notes that Plaintiff was gainfully employed from November 2002 until March 2003.  [Tr. 87].  See Noble., 978 F. Supp. at 986 (citing Browning, 958 F.2d at 821 (holding that where a claimant has worked while affected by an impairment, the claimant must prove that her condition has deteriorated significantly to substantiate a claim for disability based on that condition)).

- June 17, 2003, four months after Plaintiff's alleged onset date, Dr. Manning reported no extreme fatigue [Tr. 113];

- September 30, 2003, Dr. Manning diagnosed Plaintiff as chronically fatigued [Tr. 238]; and

- August 16, 2005, Plaintiff was noted as being "intensely fatigued." [Tr. 124].

Beyond Dr. Manning, only Dr. Robert Davis commented on whether Plaintiff suffered from fatigue. On August 18, 2004, he reported that Plaintiff was not suffering from fatigue. [Tr. 314].

The Court notes that an ALJ may not assign controlling weight to a treating physician's opinion if that opinion is not supported by sufficient clinical findings or it is inconsistent with the evidence. Walters, 127 F.3d at 530. Because Dr. Manning did not make sufficient clinical findings of fact and the only other doctor to comment on fatigue found that Plaintiff did not suffer from fatigue, this matter rests on credibility. This Court may not decide questions of credibility. Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir. 1987). Accordingly, this Court finds there is sufficient evidence to support the ALJ's findings that Plaintiff does not suffer from disabling fatigue.

6. Anxiety

Plaintiff testified that she suffers from anxiety attacks. [Tr. 387]. Dr. Sid Y. Noor diagnosed Plaintiff as suffering from anxiety on: October 15, 2003; November 17, 2003; December 16, 2003; and January 15, 2004. All of the other evidence in the record, however, suggests that Plaintiff either does not suffer from anxiety or the anxiety is controlled by medication. On May 3, 2004, Dr. Ahmed, Plaintiff's treating psychologist, reported that Plaintiff had no features of anxiety. Dr. Sultan, on February 2, 2004, found that Plaintiff's mood and affect were without anxiety. [Tr. 271]. Further, Dr. Wayne Page, a consultative physician found that Plaintiff exhibited no objective signs of anxiety. [Tr. 219]. Dr. Manning found that Plaintiff's anxiety was controlled by Xanax on

the following dates: July 19, 2002; November 18, 2002; February 17, 2003; and June 17, 2003.  [Tr. 113, 116, 120, 125].  Accordingly, this Court finds that sufficient evidence exists in the record to support the ALJ's finding that Plaintiff is not disabled by anxiety; either Plaintiff does not suffer from anxiety or her anxiety is controlled by medication.

<u>7.</u>      <u>Short Term Memory Loss</u>

Plaintiff claims she suffers from short term memory loss which prevents her from being able to work.  In support thereof, Plaintiff points to an incident where doctors recorded that she overdosed by ingesting a Duragesic patch, which contains pain medicine.  [Tr. 395].  The emergency room physician stated that Plaintiff's son told him that Plaintiff had placed a Duragesic patch on her skin and ingested another one.  [Tr. 180].  When asked about the incident by Dr. Manning, Plaintiff reported that she took the patch because of a severe menstrual period.  [Tr. 239].  At the hearing, she claimed she never ingested a patch, but rather failed to remember that she had put another one on due to her short term memory loss.  [Tr. 395].

Beyond Plaintiff's self-reported memory loss, there have been no objective medical findings of short-term memory loss.  The only doctor to opine on Plaintiff's memory was Dr. Wayne Page, a consultative physician.  He determined that Plaintiff's recent and remote memory were intact.  [Tr. 219].  Beyond his opinion, whether Plaintiff suffers from short term memory loss is a credibility determination.  This Court may not decide questions of credibility.  <u>Gaffney</u>, 825 F.2d at 100.  Credibility determinations regarding subjective complaints rest with the ALJ.  <u>Siterlet v. Sec'y of Health & Human Servs.</u>, 823 F.2d 918, 920 (6th Cir. 1987); <u>see</u> <u>also</u> <u>Winston v. Comm'r of Soc. Sec.</u>, 64 F.3d 664, 1995 WL 478482, at *2 (6th Cir. Aug. 9,1995) (relying on <u>Siterlet</u>).  The ALJ has determined that Plaintiff does not suffer from disabling short term memory loss.  As this

was a credibility determination, this Court may not disturb it.

### 8. Degenerative Disc Disease

The ALJ found that Plaintiff had degenerative disc disease of the cervical and lumbar spine, which is a severe musculoskeletal impairment. However, the ALJ determined that this impairment did not equal or exceed that required to be a listed impairment. [Tr. 20-21]. Plaintiff bears the burden of demonstrating that her impairment meets or equals that of a listed impairment. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); see also Lusk v. Comm'r of Soc. Sec., 106 Fed. Appx. 405, 2004 U.S. App. LEXIS 16469, at *16 (6th Cir. Aug. 6, 2004). Specifically, "a claimant must demonstrate that [her] impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (A)). This Court finds that Plaintiff has neither carried her burden of proof nor properly argued his argument by raising the argument's substantive content in her brief. E.D.TN. L.R. 7.1(c). Accordingly, Plaintiff's argument that she should be found disabled on this basis fails.

### 9. Inability to Function Effectively

Plaintiff claims she has both an inability to associate with people or to concentrate well. At the hearing, she testified that she isolates herself and prefers to be alone. [Tr. 388]. Plaintiff self-reported, in a Daily Living Questionnaire, that she does not do activities outside of her home and that she does not try to get along with others because does not trust them; she did not state that she was incapable of performing activities outside of her home or of getting along with others. [Tr. 81, 83] A dislike of people does not equate to a medically determinable disability. A review of the entire record fails to illustrate a phobia or other medical condition which would render Plaintiff incapable of associating with people if she chose to do so. Accordingly, although an ALJ

must consider a claimant's subjective complaints, he does not have to accept them as true. Noble, 978 F. Supp. at 985 (citing Underwood v. Bowen, 807 F.2d 141, 143 (8th Cir. 1986)). In this instance, the ALJ made a credibility determination that Plaintiff maintains an ability to associate with people. This Court may not disturb an ALJ's credibility determination. Garner, 745 F.2d at 387.

As to her lack of concentration, Dr. Sultan provided a mental medical assessment of Plaintiff's ability to do work-related activities. In his April 26, 2004 report, he found that she: has a good ability to follow work rules, relate to co-workers, interact with supervisors, and function independently; has a fair ability to use judgment with the public, deal with the public, deal with work stresses, and maintain attention and concentration; fairly maintains her personal appearance; is good at understanding and caring out both complex and simple job instructions; and she has a fair ability to behave in an emotionally stable manner. [Tr. 262-63]. Accordingly, sufficient evidence exists in the record to support the ALJ's determination that Plaintiff is capable of concentration, as necessary, for a job.

Additionally, Plaintiff cites her inability to effectively use her hands and to climb, squat, or walk well as further indications of her purported disabled status. Plaintiff's evidence of these alleged inabilities are largely premised on self-reports. When a doctor attempted to ascertain her ability to use her hands, she failed to put forth an effort to complete the testing. [Tr. 219]. Ultimately, that same physician determined that Defendant had complete clinical strength and normal fine manipulation of her hands. [Id.].

As to her inability to climb, squat, or walk well, there is no finding in the record that Plaintiff is incapable of performing these actions. On April 26, 2004, Dr. Sultan filled out a medical

assessment sheet for Plaintiff, opining that she was limited in her walking and sitting and that she could occasionally climb and frequently kneel. [Tr. 260-261]. Dr. Joe Browder, on May 11, 2004, determined that Plaintiff had a full range of motion in her hips, knees, and ankles and "appropriate stability." [Tr. 328]. Additionally, her strength findings indicated a "5/5 or 4/5." [Id.]. Accordingly, the record demonstrates substantial evidence exists to support the ALJ's conclusion that Plaintiff is not disabled or severely impaired on these bases.

10. Conclusion

As one final note, Plaintiff avers that, because her doctor found her to be disabled for food stamp purposes, she should be found to be disabled for social security purposes. However, the law clearly states:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. Moreover, conclusory formulations regarding whether Plaintiff is unable to work, even when stated by a treating physician, are not determinative of the question of whether an individual is under a disability. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) (citing to 20 C.F.R. § 404.1527)). Accordingly, whether her doctor opined that she was

unable to work for Food Stamp purposes[3] or whether the Food Stamps program found her unable to work[4] is not particularly relevant to this determination. Thus, the ALJ's failure to give substantial weight to Dr. Manning's indication that she was unable to work as part of her Food Stamps application was not error.

Accordingly, based upon the entire record in this case, the ALJ did not err in according weight to certain physicians and their opinions. Substantial evidence exists to support the ALJ's determination. As such, it must be affirmed.

## B. *Finding that Sufficient Jobs Exist in the National Economy that Plaintiff is Capable of Performing*

Plaintiff also argues the Commissioner has failed to sustain his burden of establishing that there is work in the national economy which Plaintiff can perform. [Doc. 16]. Specifically, Plaintiff contends that the hypothetical posed to the vocational expert by the ALJ did not accurately portray Plaintiff's impairments. Plaintiff claims the hypothetical failed to take into account the limitations noted by Doctors Sultan, Manning, and Kupstas, and that it did not accurately portray her own residual functional capacity assessment. Plaintiff contends that, because the hypothetical was incomplete, the ALJ erred by relying upon the testimony of the vocational expert. The Commissioner argues that the ALJ did not err by relying upon the vocational expert's testimony because the hypothetical was complete in that it included all the limitations the ALJ found credible.

---

[3]Dr. Manning marked that Plaintiff was unable to work due to rheumatoid arthritis and fibromyalgia on September 19, 2002. [Tr. 122]. However, the Court notes that Plaintiff was gainfully employed shortly thereafter, from November 2002 to March 2003. [Tr. 87]. See Noble, 978 F. Supp. at 986 (citing Browning, 958 F.2d at 821 (holding that where a claimant has worked while affected by an impairment, the claimant must prove that her condition has deteriorated significantly to substantiate a claim for disability based on that condition)).

[4]On May 5, 2003, Plaintiff stated that she does not get food stamps. [Tr. 334].

[Doc. 18]. Accordingly, the Commissioner contends that the ALJ properly evaluated Plaintiff's impairments, accounted for them in the hypothetical, and substantial evidence supports the ALJ's finding that Plaintiff can perform a significant number of jobs.

As Plaintiff correctly noted, at Step Five of a disability inquiry, the Commissioner bears the burden of proving that other jobs are available for the claimant within the national economy if the claimant does not have a listed impairment and cannot do his last regular work. Foreman v. Comm'r of Soc. Sec., 122 F.3d 24, 25 (8th Cir. 1997); see also Winston, 64 F.3d 664, 1995 WL 478482, at *3 (holding that if the claimant cannot perform past relevant work, then the burden shifts to the Commission to show that other jobs are available despite the claimant's impairments) (relying on Born v. Sec'y of Health & Human Serv., 923 F.2d 1168, 1173 (6th Cir. 1990)). If the claimant cannot perform past relevant work, the Commissioner must prove that the claimant can perform other work, based on all relevant factors, including age, education, previous work experience, and residual functional capacity. Bruce, 1995 WL 154891, at *1. To determine whether a claimant can perform other work, an ALJ may rely on vocational testimony or the grids provided in the regulations. Id.; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.28.

A vocational expert's testimony can constitute substantial evidence only if the testimony is in response to a hypothetical question that accurately portrays a claimant's abilities. Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990). At the October 8, 2004 administrative hearing, the following testimony was elicited from Donna Bardsley, the vocational expert:

> ALJ McFadyen:    Ms. Bardsley, I want you to assume the following. The claimant is a younger individual. She has a high school education. She has at least a mid to high borderline intelligence. That she is limited to lifting 20 pounds and frequently

10 pounds. No frequent overhead or above shoulder level work. Four hours of standing and no limitation sitting in four hours out of an eight hour day, and that she should not be in an environment that has excessive fumes and dust. In addition, because of medication, that she should not be around unprotected heights or moving machinery, or in jobs that require significant vigilance to prevent injury. Based on those limitations, do you have an opinion as to whether there are jobs the claimant can perform which exists in reasonable numbers in the regional economy?

Ms. Bardsley:   Yes, sir. There would be.

ALJ McFadyen:   Okay. And what would be some examples?

Ms. Bardsley:   There would be some information clerks. In the region 360 nationwide, and 485,000. Order clerks. In the region 250 and nationwide 445,000. Hand packagers. In the region 350, and nationwide 550,000. Sorters. In the region 300, and nationwide 385,000. Assemblers. In the region 475, and nationwide 565,000. Inspectors. In the region 340, and nationwide 450,000. Cashiers. In the region 500, and nationwide 1,500,000. Ticket sellers. In the region 300, and nationwide 350,000.

ALJ McFadyen:   And these are examples and not an exhaustive list, is that correct?

Ms. Bardsley:   Yes, sir.

    . . . . . .

Plaintiff's Attorney: In [Exhibit] 17F Dr. Nevills (Phonetic) examined Ms. Shockley. She said that there were some serious but not precluded limitations in the ability to relate to co-workers, deal with the general public, interact with supervisors, and behave in an emotionally stable manner. Would those together reduce at all the number of jobs from the first hypothetical?

Ms. Bardsley:   It would eliminate those working with the public.

Plaintiff's Attorney: Okay. Your Honor, I apologize that I do not have a numbered copy but there was a report from a Dr. Sultan on September 8, 2004. It was an RFC form and stated occasional lifting of eight pounds, and the frequent was left blank. The standing and walking less than one hour a day. Sitting for three to five hours out

of a day with half hour intervals. Occasional climb and stoop, never kneel or crawl, and occasional to never crouch and balance. Limited handling pushing and pulling with environmental restrictions on being around moving machinery, temperature extremes, humidity and vibration. Would that have any impact on the jobs stated?

Ms. Bardsley:        They would all be eliminated.

Plaintiff's Attorney:   And if a person were considered under the influence based on their medications given to them by the treating physicians would that preclude any of the jobs?

Ms. Bardsley:        It would affect all of them.

Plaintiff's Attorney:   And how so?

Ms. Bardsley:        In other words, if they couldn't say work an eight hour day, or couldn't concentrate, or needed breaks outside the normal break periods, then there wouldn't be any jobs.

                              . . . . . .

ALJ McFadyen:        What percentage of the jobs would be eliminated if you just considered Dr. Nevill's restrictions along with the restrictions that I mentioned earlier?

Ms. Bardsley:        Okay.   That  was  the mental restrictions, correct, 17F?

ALJ McFadyen:        Yes.

Ms. Bardsley:        Okay. I would say about 40 percent.

[Tr. 405-408]. Plaintiff challenges the ALJ's reliance on the above testimony by asserting that the

hypothetical did not accurately reflect the limitations noted by Doctors Sultan, Manning, and

Kupstas. As discussed in Part A above, however, substantial medical evidence existed to support

the ALJ's position. The ALJ's hypothetical included all limitations the ALJ found credible and

supported by medical evidence; "it is well-established that an ALJ may pose hypothetical questions

to a vocational expert and is require to incorporate only those limitations accepted as credible."

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230,1235 (6th Cir. 1993) (per curiam) (citing to Hardaway v. Sec'y of Health & Human Servs, 823 F.2d 922, 927-28 (6th Cir. 1987)). Accordingly, ALJ McFadyen did not err by including only those limitations he found credible in the hypothetical posed. Accordingly, the ALJ did not err by relying on the vocational expert's testimony in response to the hypothetical.

As to Plaintiff's argument that the hypothetical posed deviated from the ALJ's own assessment of residual functional capacity, the Court finds Plaintiff's argument disingenuous. Plaintiff notes that the ALJ found Plaintiff's residual functional capacity did not allow working overhead or at shoulder level, whereas the hypothetical posed to Ms. Bardsley provided for no frequent overhead or above shoulder level work. As the Commissioner rightfully asserted, the jobs identified by Ms. Bardsley as jobs a person with Plaintiff's limitations was capable of performing did not involve overhead work or work at shoulder level. For example, the jobs of information clerk and ticket sellers do not involve overhead work or work at shoulder level. See U.S. Dep't of Labor, Dictionary of Occupational Titles §§ 211.467-030 and 237.267-022 (4th ed. 1991). Accordingly, this Court finds that Plaintiff's argument about variances between the posed hypothetical and the ALJ'S assessed residual functional capacity are without merit.

Plaintiff's last argument regarding the hypothetical posed was that the ALJ erred by failing to ask the vocational expert about any potential conflicts between her testimony and the information contained in the Dictionary of Occupational Titles. However, Plaintiff failed to identify any conflicts between the expert's testimony and the information contained in the Dictionary of Occupational Titles. Accordingly, the ALJ's failure to ask Ms. Bardsley about possible conflicts constitutes harmless error. See Krauss v. Comm'r of Soc. Sec, 39 Fed. Appx. 279, 280, 2002 WL

1396897, at *2 (6th Cir. June 26, 2002) (unpublished) (holding that where error was harmless, no remand was necessary) and <u>Jackson v. Comm'r of Soc. Sec.</u>, 120 Fed. Appx. 904, 2005 WL 23363 (3rd Cir. Jan. 6, 2005) (unpublished) (holding that "where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision")).

Accordingly, the ALJ did not err in relying on the hypothetical posed to the vocational expert. Additionally, he did not err by failing to remedy any inconsistencies between the vocational expert's testimony and the <u>Dictionary of Occupational Titles</u>. The vocational expert's testimony, therefore, constitutes substantial evidence to support the ALJ's decision. As such, the Commissioner has sustained his burden of proving that jobs exist within the national economy that Plaintiff is capable of performing.

## V.    Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED**[5] that Plaintiff's motion for summary judgment [Doc. 15] be **DENIED** and that Defendant's motion for summary judgment [Doc. 17] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[5]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).